**NEWELL COMPANIES, INC.,**
**Plaintiff–Appellant,**

v.

**KENNEY MANUFACTURING COMPANY, Defendant/Cross–Appellant.**

Nos. 85–2232, 86–711, 86–742 and 86–1018.

United States Court of Appeals, Federal Circuit.

Dec. 29, 1988.

James G. Staples, Baker and McKenzie, Chicago, Ill., argued for plaintiff-appellant. With him on the brief was Philip J. Zadeik. Also on the brief was John H. Bush, Blish & Cavanagh, of Providence, Rhode Island.

Lars I. Kulleseid, Fish & Neave, New York City, argued for defendant/cross-appellant. With him on the brief were Kenneth B. Herman and C. Joseph Laughon, II.

Before NIES, NEWMAN, and ARCHER, Circuit Judges.

NIES, Circuit Judge.

Newell Companies, Inc., appeals from the judgment of the United States District Court for the District of Rhode Island, 606 F.Supp. 1282, 226 USPQ 157 (D.R.I.1985) (Boyle, C.J.), in a patent infringement suit brought against Kenney Manufacturing Company. Following a jury trial in which the jury answered interrogatories responding, *inter alia*, that no claims in issue of United States Patent No. 4,006,770 (the '770 patent), owned by Newell, were proved invalid for obviousness under the standard of 35 U.S.C. § 103 (1982), the district court granted Kenney's reserved motion for directed verdict and entered judgment for Kenney on that issue holding claims 1, 2, 6 and 7 invalid. We *affirm*.

I

*Background*

The invention of the '770 patent relates to retractable (up and down) window shades. Ferguson, the inventor, was products manager of Newell's window shade division, and developed the shade after seeing certain vinyl shade material manufactured by Sean Corcoran. Corcoran's material is scored partially through in lines parallel to one lengthwise edge so that it can be torn to a desired width. Its advantage over other scored shade materials is that light does not shine through the scored portion.

Corcoran sought a patent which claimed his shade material in combination with a roller, and in *In re Corcoran*, 640 F.2d 1331, 208 USPQ 867 (CCPA 1981), a predecessor of this court addressed the patentability of Corcoran's invention. Because the Corcoran material had been placed on sale in the United States in 1972, more than a year before the filing date of Corcoran's application, and the combination with a roller would have been obvious, Corcoran was held to have lost his right to a patent under 35 U.S.C. § 102(b)/§ 103 (1982). Specifically, the court stated:

> As to the support means we conclude that, given the plastic sheet shade material denominated a "window shade," nothing could be more obvious than to attach it to a roller or other support.

*Id.* at 1334, 208 USPQ at 870. The Corcoran material alone or in combination with a roller, thus, was unprotectable and freely available for anyone to use.

After learning of the Corcoran material in late 1973 or early 1974, Ferguson, sensing the market potential, contacted Corcoran, who resided in Ireland, and requested sample shades. Corcoran sent the shades along with a letter explaining that he would not have the output to supply Newell until 1975 and that at the time rollers were in better supply and cheaper in America. This correspondence led to meetings and eventually to a business arrangement between Corcoran and Newell. Ferguson proceeded to develop the subject matter of the '770 patent, which attaches the Corcoran material to a telescoping roller having a smaller section able to slide inside a larger section.

Ferguson claims the advantage that his shade can be assembled by consumers without the use of tools. As explained in

the specification, the material is affixed to the larger roller section. After adjusting the width of the material and roller, the consumer removes a protective cover on an adhesive strip on the smaller roller end and presses the material onto that adhesive. In conducting test marketing, Newell made shades from material supplied by Corcoran and from telescoping rollers available on the market and made by Clopay Corporation. As described *infra*, the Clopay roller came with a cardboard sleeve which fitted over its smaller telescoping end. That sleeve was unnecessary in the Ferguson assembly and was simply discarded. The Clopay roller is the subject of United States Patent No. 3,203,468 (the '468 patent), issued to Gossling and owned by Clopay.

Shortly thereafter, Ferguson applied for the patent which is the subject of this suit. Claim 1 of the '770 patent, which issued to Ferguson in February 1977, reads:

In an extensible and retractable roll window shade assembly which is width adjustable and installable by the consumer without the use of tools or cutting elements, the combination of a telescoping roller assembly, said telescoping roller assembly including a first roller section, said first roller section having a constant external diameter from end portion to end portion, the outer end portion of said first roller section having first means for supporting the window shade assembly from a first support location, the inner end portion of said first roller section having an opening therein of a size to receive a second roller section, said second roller section having a constant nominal external diameter from end portion to end portion, the outer end portion of said second roller section having second means for supporting the window shade assembly from a second support location, said second roller section being telescopically, slidably received within the first roller section whereby the length of the roller assembly can be adjustable within the limits of the range of telescoping movement, means for precluding relative rotation between the first and second roller sections, a shade

of flexible sheet material, a first portion of the upper end of the shade being secured to the first roller section, one side portion of the shade having a plurality of lines of weakness which extend from the upper end of the shade to the lower end of the shade whereby the width of the shade can be adjusted to a desired width by separating a portion of the side of the shade from the balance of the shade, said separated portion being bounded, on the outside, by the original shade edge and, on the inside, by a line of weakness along which said portion is separated from the balance of the shade, said first and second telescoping roller sections being adjustable to an overall length which is at least as wide as the length of the final shade width without severance of any portion of either section, securement means for securing the second portion of the upper end of the shade, which is generally aligned with the second roller section, in fixed relationship to the second, smaller external diameter roller section with a substantially constant securing force from point to point along the length of the portion of the second roller section which extends beyond the end of the first roller section, whereby the positions of the first and second roller sections are fixed with respect to one another and to the shade throughout the entire area of overlap of the shade and the roller assembly.

The Newell window shade was successful with consumers immediately on its introduction into full marketing in October 1975. Other shade companies introduced competing products. In July 1981, Kenney's do-it-yourself shade appeared in response to the requirements of its customer, K–Mart. The Kenney shade was made with scored material and a telescoping roller but, unlike Ferguson's design, the shade material was attached to the larger roller section only and was simply allowed to wrap loosely around the smaller end.

■ At trial, Kenney asserted numerous defenses, but the dispositive issue here is whether the '770 invention would have been obvious from prior art which includes

the Corcoran material, telescoping rollers, and various means for securing a shade to a roller including adhesive strips and partial securement as in the Kenney shade. At the conclusion of presentation of evidence, both parties moved for a directed verdict on which the district court reserved its rulings, and the case was submitted to the jury. In its instructions, the court directed the jury to answer a series of questions, including a question whether any of the claims of Newell's '770 patent would have been obvious, to which the jury answered "No," and whether Kenney infringed any claims, to which the jury answered "Yes." After receipt of the jury's verdict in this form, the court made its rulings on the parties' motions for directed verdict, denying Newell's and granting Kenney's.[1] The district court set out in detail a set of facts and explained the basis for its decision holding claims 1, 2, 6, and 7 unpatentable under 35 U.S.C. § 103, that is, the court concluded from this set of facts that the invention would have been obvious to one of ordinary skill in the art.[2] The court also held that the jury's verdict was not reasonable. Newell appeals the grant of judgment for Kenney.

After entry of judgment, Kenney moved for attorney fees. The court denied that motion and Kenney cross-appeals the denial of attorney fees.[3]

## II

### Issues in Newell's Appeal

The dispositive issue in Newell's appeal is whether the trial court erred in setting aside the jury's verdict of nonobviousness of the subject invention. Newell does not challenge the trial court's statement of the facts underlying the trial court's obviousness conclusion except in an immaterial detail. Newell's challenge is two-fold. First, it argues that the trial court improperly substituted its conclusion on obviousness for that of the jury and second it argues that, in any event, the subject invention meets the statutory standard of section 103. We deal with these arguments in turn.

## III

### Standard of Review of the Grant of Directed Verdict or JNOV

The first issue raised by Newell presents the question whether a litigant is entitled

1. The Federal Circuit follows regional circuit law on this type of procedural matter. *Digital Equip. Corp. v. Emulex Corp.*, 805 F.2d 380, 382 n. 3, 231 USPQ 779, 781 n. 3 (Fed.Cir.1986). The procedure of ruling on the directed verdict motion after the jury verdict and entering judgment thereon, under the circumstances here, is in accordance with the procedural law of the First Circuit.

Rule 50(b) provides that a motion for JNOV must be made within ten days of entry of *judgment.* In *First Safe Deposit National Bank v. Western Union Telegraph Co.*, 337 F.2d 743, 746 (1st Cir.1964), the court affirmed a district court entry of directed verdict when the court acted within the time for granting JNOV. *Accord Norton v. Snapper Power Equip.*, 806 F.2d 1545, 1547 (11th Cir.1987); *Nichols Constr. Co. v. Cessna Aircraft Co.*, 808 F.2d 340, 354–56 (5th Cir. 1985); *Warkentien v. Vondracek*, 633 F.2d 1, 2 (6th Cir.1980).

The motion for directed verdict here was similarly granted within the time for JNOV. While the jury returned its verdict here on February 21, 1984, judgment was not entered at that time because other claims had to be resolved. Judgment was actually first entered on April 4, 1985, by directed verdict. Thus, this ruling falls within the ruling of *First Safe Deposit National Bank.*

2. 35 U.S.C. § 103 provides in pertinent part:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

3. Appeal Nos. 85–2232, 86–711, and 86–1018 are duplicate appeals by Newell, all from the district court's April 4, 1985 judgment, filed because of uncertainty of the date from which to appeal. The Supreme Court in *Budinich v. Becton Dickinson & Co.,* —— U.S. ——, 108 S.Ct. 1717, 1720–22, 100 L.Ed.2d 178 (1988), has now held that a decision on the merits is a final decision for purposes of immediate appeal, even though the recoverability or amount of attorney's fees for the litigation remains to be determined. Appeal No. 86–742 is the Kenney cross-appeal.

to a jury verdict on a disputed issue of obviousness where there are no disputed issues of material fact underlying that issue. In *Hepner v. United States*, 213 U.S. 103, 29 S.Ct. 474, 53 L.Ed. 720 (1909), which upheld the grant of a directed verdict and was reaffirmed in *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), the Court stated:

> The objection made in behalf of the defendant, that an affirmative answer to the question certified [4] could be used so as to destroy the constitutional right of trial by jury, is without merit and need not be discussed. The defendant was, of course, entitled to have a jury summoned in this case, but that right was subject to the condition, fundamental in the conduct of civil actions, that the court may withdraw a case from the jury and direct a verdict, according to the law if the evidence is uncontradicted and raises only a question of law.

> Restricting our decision to civil cases, in which the testimony is undisputed, and without qualifying former decisions requiring the court to send a case to the jury, under proper instructions as to the law, where the evidence is conflicting on any essential point, we answer the question here certified in the affirmative.

213 U.S. at 115, 29 S.Ct. at 479–80.

■ All of our precedent holds that, where the only issue is, as here, the application of the statutory standard of obviousness (35 U.S.C. § 103) to an established set of facts, there is only a question of law to be resolved by the trial judge, and that the trial court's conclusion on obviousness is subject to full and independent review by this court.

In a case directly on point in ruling on a JNOV motion, *Medtronic, Inc. v. Intermedics, Inc.*, 799 F.2d 734, 738, 230 USPQ 641, 643 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987), Judge Davis stated the law in exemplary fashion as follows:

On this appeal, Intermedics does not contest the *Graham* factual inquiries stipulated by the parties or decided by the jury; rather, Intermedics disputes only the ultimate conclusion of nonobviousness with respect to claims 1 and 7 of the C/D patent. Obviousness is a question of law. In reviewing a District Court's refusal to grant JNOV, it is the duty of this court to be satisfied that the law has been correctly applied to the facts found. *Structural Rubber Products*, 749 F.2d at 719, 223 USPQ at 1273; *Railroad Dynamics, Inc.*, 727 F.2d at 1512, 220 USPQ at 936.

Similarly, *Structural Rubber Products Co. v. Park Rubber Co.*, 749 F.2d 707, 223 USPQ 1264 (Fed.Cir.1984) held:

> The introduction of a jury can not change the *nature* of the obviousness decision. It continues to be a legal issue for the court. Indeed, the role of a trial court should not be significantly different in a patent jury trial from its role in a patent bench trial with respect to legal issues. On appeal, the standard of review applied by an appellate court to factual issues is affected by the different type of trial. Findings of fact by the jury are more difficult to set aside (being reviewed only for reasonableness under the substantial evidence test) than those of a trial judge (to which the clearly erroneous rule applies). But the standard of review of the conclusion on obviousness remains the same—it is a question of law. Thus, it is the duty of the appellate court to be satisfied that the law has been correctly applied to the facts regardless of whether the facts were determined by judge or jury.

*Id.* at 718–19, 223 USPQ at 1273 (footnote omitted). *See also White v. Jeffrey Mining Mach. Co.*, 723 F.2d 1553, 1558–60, 220 USPQ 703, 705–07 (Fed.Cir.1983) (reversed denial of JNOV where "the parties are in substantial agreement on the facts bearing on the question of obviousness"), *cert. denied*, 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed. 2d 49 (1984); *American Hoist & Derrick*

---

**4.** The question certified was whether the trial court may direct a verdict where evidence is undisputed.

*Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1361, 220 USPQ 763, 772 (Fed.Cir.1984) (remanded because "[a] district court may not solicit only a legal conclusion [on obviousness] from the jury").

■ Our precedent on summary judgment motions, which are decided under essentially the same standard as that for a motion for directed verdict or JNOV, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), is in accord with the above decisions. In that connection we have held that where the ultimate legal conclusion of obviousness is disputed, but not the underlying facts, there is no issue of fact requiring a trial, even though some facts favor obviousness, some nonobviousness. *See, e.g., Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 220 USPQ 584 (Fed.Cir.1984); *Chore–Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 218 USPQ 673 (Fed.Cir.1983). This is so even in a case where a jury is demanded, because it is not the function of the jury to pick and choose among *established facts* relating to obviousness in contrast to its obligation to sift through *conflicting evidence* and determine what those facts are. On the other hand, where there appears to be a genuine evidentiary conflict over an underlying material fact, the grant of summary judgment is inappropriate. *See, e.g., Finish Eng'g Co. v. Zerpa Indus., Inc.*, 806 F.2d 1041, 1 USPQ2d 1114 (Fed.Cir.1986). At times, no doubt, "the issues may be such that only after the agony of a full-blown trial may it authoritatively be determined that there was never really the decisive issue of fact at all." *Robbins v. Milner Enters., Inc.*, 278 F.2d 492, 497 (5th Cir.1960). But there is no question that the court may take the issue from the jury on a directed verdict or JNOV motion at least in the same circumstances where it could

have granted summary judgment. *See Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511; 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 50.03[4] at 50–38 to –39 (2d ed.1988); 9 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2532 at 578 (1971).

■ All the above merely reflects that a party has a right to a *jury trial* in an action at law, not a right to a *jury verdict.* A jury verdict need not be obtained and may be set aside under the common law principles incorporated into the Constitution where there is no fact issue for the jury to decide.[5] The authority of the judge to rule on issues of law during the course of proceedings is an essential element of a jury trial.

■ As explained in *Herron v. Southern Pacific Co.*, 283 U.S. 91, 95, 51 S.Ct. 383, 384, 75 L.Ed. 857 (1931):

> In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. This discharge of the judicial function as at common law is an essential factor in the process for which the Federal Constitution provides....

> "Trial by jury," said the court in *Capital Traction Co. v. Hof*, 174 U.S. 1, 13, 14 [19 S.Ct. 580, 585, 585–86, 43 L.Ed. 873 (1899)], "in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and empanelled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of

---

**5.** As the noted scholar, Professor Blume has stated:

> The right guaranteed by the Constitution is the right to jury *trial;* not a right to a jury's *verdict.* There is no right to a trial unless there is an issue to be tried.

> In applying what may be called the "issue" test to determine whether there is a right to jury trial, each factual element in the claim or

defense should be considered separately. There may be issues formed by the evidence as to some of the facts and not as to others. Only those facts which are in issue under the evidence should go to the jury for determination. The right of jury trial extends to these facts, and to these alone.

W. Blume, *Origin and Development of the Directed Verdict*, 48 Mich.L.Rev. 555, 574 (1950).

twelve men in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence." See, also, *United States v. Philadelphia & Reading R. Co.*, 123 U.S. 113, 114 [8 S.Ct. 77, 77–78, 31 L.Ed. 138 (1887)]; *Patton v. United States*, 281 U.S. 276, 288, 289 [50 S.Ct. 253, 254, 254–55, 74 L.Ed. 854 (1930)].

*See also St. Louis v. Praprotnik,* —— U.S. ——, 108 S.Ct. 915, 925, 99 L.Ed.2d 107 (1988); *Miller v. Fenton*, 474 U.S. 104, 112–14, 106 S.Ct. 445, 451–52, 88 L.Ed.2d 405 (1985); *Galloway v. United States*, 319 U.S. 372, 389–92, 63 S.Ct. 1077, 1086–88, 87 L.Ed. 1458 (1943); *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935); *Sparf & Hansen v. United States*, 156 U.S. 51, 80–82, 15 S.Ct. 273, 284–285, 39 L.Ed. 343 (1895); *United States v. Articles of Drugs: 5906 Boxes*, 745 F.2d 105, 112–13 (1st Cir.1984) (Stewart, J., Ret.). Had the trial court failed to exercise that authority here,[6] a constitutional jury trial would have been denied, not upheld.

Notwithstanding the above precedent, Newell finds support in some decisions of this court for its argument that the district court improperly substituted its determination of obviousness for that of "reasonable jurors," namely this court's opinions in *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 221 USPQ 669 (Fed. Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984); *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 220 USPQ 929 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed. 2d 150 (1984); and *Connell v. Sears Roebuck & Co.*, 722 F.2d 1542, 220 USPQ 193

(Fed.Cir.1983). In particular, Newell points to statements in *Connell* that "it is not error to submit the question of obviousness to the jury," *Connell*, 722 F.2d at 1547, 220 USPQ at 197, and that "[j]ury verdicts must be treated with great deference," *id.* at 1546, 220 USPQ at 196. Newell fails to note that in *Connell* this court affirmed the setting aside of a jury verdict of nonobviousness of the invention. Newell also fails to note the entirety of the court's statement in *Connell*. This court held in *Connell* that, although it is not error to submit the obviousness/nonobviousness issue to the jury, "it is ultimately a question of law decidable by the court in response to a motion for JNOV." *Id.* at 1550, 220 USPQ at 200. It must also be pointed out that *Connell* involved submission of the obviousness issue where there were material, factual disputes, not submission of that issue where no underlying facts are in dispute ("the facts underlying the jury's nonobviousness conclusion were not supported by substantial evidence," *id.* at 1548, 220 USPQ at 198).

Were we to adopt Newell's argument that, where no facts are in dispute, *Connell* requires that obviousness be determined by the opinion of reasonable jurors on whether the statutory standard of section 103 was or was not satisfied, our decisions in *Medtronic, Structural Rubber,* and *White*, among others, would be in direct conflict with *Connell*. By the same token, *Connell* would then be in conflict with our prior summary judgment and bench trial rulings which hold that the ultimate conclusion of obviousness, that is, the application of the statutory standard to a set of facts, is an issue of law, and like any other issue of law is subject to independent plenary review and determination by this court.[7]

---

**6.** It is necessary for a litigant seeking to have a judge rule on a legal issue to have followed the required procedures. A court is not obligated to act *sua sponte*. This qualification applies throughout this opinion.

**7.** A notable conflict would arise between *Connell* and the most definitive decision of the court holding that the application of the statutory standard of obviousness to a set of established

facts is an issue of law, *Panduit Corp. v. Dennison Manufacturing Co.*, 810 F.2d 1561, 1 USPQ2d 1593 (Fed.Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987). That decision was rendered following remand from the Supreme Court, 106 S.Ct. 1578 (1986), *vacating* 774 F.2d 1082 (Fed.Cir.1985). To the same effect are all the decisions of this court and its predecessors across the entire spectrum

■ This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc. See UMC Elecs. Co. v. United States,* 816 F.2d 647, 652 n. 6, 2 USPQ2d 1465, 1468 n. 6 (errata) (Fed.Cir.1987), *cert. denied,* ── U.S. ──, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988). Where there is direct conflict, the precedential decision is the first. Even if all comments in the decisions considered here are not completely harmonious, Newell points to no actual conflict, and we see none. Nothing said in *Structural Rubber, Medtronic,* or in any other prior decision, or in this opinion, should be interpreted to mean that because a court must make its independent decision on the ultimate issue of obviousness, a court can also make its own factual findings on that issue independent of the jury. A jury's resolution of evidentiary conflicts to establish the facts is the essence of its role in a jury trial. Judges must accept the factual findings, presumed from a favorable jury verdict, which are supported under the substantial evidence/reasonable juror standard. *See Structural Rubber,* 749 F.2d at 719, 223 USPQ at 1273; *Medtronic,* 799 F.2d at 738, 230 USPQ at 643. Those opinions do not depart from the holding in *Connell.* Where the case turns on resolution of a factual issue, the issue of obviousness may be given to the jury with proper instructions.[8]

Conversely, nothing said in *Connell, Railroad Dynamics,* or *Perkin–Elmer* entitles Newell to a jury verdict where there is no genuinely or substantially disputed issue of material fact underlying the obviousness determination. In that instance, there is only an issue of law for the trial court to resolve and that court's conclusion is subject to plenary review in this court.

■ Significant to an understanding of our precedent is that a number of earlier appeals in jury cases had been tried under the law of certain circuits' precedent which held that obviousness was a question of fact.[9] In such circuits the jury was not infrequently asked to answer the question of obviousness in a special fact verdict under Rule 49(a) of the Federal Rules of Civil Procedure.[10] In any appeal, of course, an appellate court must decide whether the ultimate judgment can be sustained. Any error must be harmful. Thus, when the parties presented the case to this court in a manner which defined appropriate issues for resolution, this court proceeded to resolve those issues. Procedural errors that do not unfairly affect the outcome are to be ignored. Trials must be fair, not perfect. *See Fonar Corp. v. Johnson & Johnson,* 821 F.2d 627, 633, 3 USPQ2d 1109, 1114 (Fed.Cir.1987), *cert. denied,* ── U.S. ──, 108 S.Ct. 751, 98 L.Ed.2d 764 (1988). This is such a case. Giving the jury a direct question to answer on the legal issue of obviousness was technically a violation of Rule 49(a), but harmless here. Newell does not challenge the statement in the trial court's opinion as to the underlying material facts. Thus, the issue presented to us is solely a legal question we may decide, specifically, whether the statutory standard of obviousness "has been correctly applied to the facts found." *Medtronic,*

*See Connell,* 722 F.2d at 1546, 220 USPQ at 196–97, *American Hoist,* 725 F.2d at 1361, 220 USPQ at 771; *Structural Rubber,* 749 F.2d at 720, 223 USPQ at 1274.

**9.** *See* 2 D. Chisum, *supra,* § 5.04[3][d] at 5–150 to –158.1 (reviewing each circuit's position on whether obviousness is a question of law or fact).

**10.** Rule 49(a) reads in pertinent part:
**Special Verdicts and Interrogatories**
 **(a) Special Verdicts.** The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact.

of our patent jurisdiction, which covers ex parte appeals from the Patent and Trademark Office, appeals from decisions of the United States International Trade Commission, and appeals from the United States Claims Court, as well as appeals from United States district courts. Representative cases may be found in the extensive listing at 2 D. Chisum, *Patents* § 5.04[3][d] at 5–157 to –158.1 (1988 and Supp.1988).

**8.** *Connell, American Hoist,* and *Structural Rubber* all emphasize the need for juries to focus on the factual inquiries underlying obviousness. This can be achieved through interrogatories accompanying a general verdict, special fact verdicts, or mandatory alternative instructions.

799 F.2d at 738, 230 USPQ at 643. *See also Kungys v. United States,* — U.S. ——, 108 S.Ct. 1537, 1547, 99 L.Ed.2d 839 (1988) ("materiality under [8 U.S.C.] § 1451(a) is an issue of law, which we may decide for ourselves"). Accordingly, we turn to the merits of the court's ruling holding the '770 patent invalid under section 103.

## IV

### The District Court Correctly Held That Invention of the '770 Patent Would Have Been Obvious

The district court began its obviousness analysis by delineating the obviousness standard, as set forth in *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545 (1966), and the significance of "secondary considerations" as interpreted in *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538–39, 218 USPQ 871, 879 (Fed.Cir.1983), and *Environmental Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 695, 218 USPQ 865, 867 (Fed. Cir.1983), *cert. denied,* 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). The court further stated that it was mindful of the presumption of validity and that Kenney bore the burden of establishing facts, by clear and convincing evidence, which established invalidity, citing *Perkin–Elmer,* 732 F.2d at 894, 221 USPQ at 674.

The court noted that the Corcoran material and shade design, which had *not* been considered by the PTO examiner, were prior art; also, that Corcoran contemplated using a roller which could be adjusted (albeit by cutting) to conform to the adjusted width of the shade material.

The court noted that numerous prior patents showed telescoping rollers adjustable in width to which window shade material was attached. It particularly analyzed the United States patents to Gossling, No. 3,203,468 and No. 3,299,944, for window shades with adjustable, telescoping rollers. In both, the shade material is adhesively secured directly to the *larger* roller section as in the claims, *sub judice.* They also disclose that the material extending over the smaller roller section can be kept from drooping by adhesively affixing it to a cardboard sleeve over the smaller roller section or by discarding the sleeve and providing extra rolls of material to form a tube-like structure around the smaller roller section.[11]

The court noted that no single item of prior art specifically covered a shade using the improved Corcoran-type, scored, vinyl material on a telescoping roller. Gossling '468 and '944, for example, show mounting *cuttable* cloth fabric on a telescoping roller. However, there was evidence that others of ordinary skill in the art had, prior to Ferguson's invention, proposed securing other, less satisfactory, strippable, shade material to telescoping rollers to achieve do-it-yourself adjustability without tools.[12] In sum, the court concluded, however, that "[g]iven the nature of the [Corcoran] material, it would have been obvious to one with ordinary skill in the art to mount that shade material on a telescoping roller, well known in the art, which could be quickly shortened to match the width of the shade. Like the *Corcoran* court [ (the CCPA) ], this Court feels that '. . . nothing could be more obvious. . . .' " *Newell,* 606 F.Supp. at 1296, 226 USPQ at 166.

---

11. Gossling '468 specifically teaches using the telescoping roller without the sleeve on the small roller section:

> The embodiments of FIGURES 11–12 and 13–14 [showing direct attachment to smaller roller section] illustrate equivalent structures which will function in a manner similar to the paper tube and which can be substituted for the paper tube without sacrifice of the functional characteristics of the shade.
> Specification '468, col. 5, lines 28–32.
> Similarly, a shade could be made with a sufficient excess of shade material which when wrapped upon itself would provide the supporting tube overlying the telescoping inner end of the shade roller.
> Specification '468, column 6, lines 2–6.

12. Newell argues that a 1967 internal memorandum of a Kenney employee proposing this combination was inadmissible evidence because it was not technically "prior art." However, it was admissible for the purpose indicated. *See Thomas & Betts Corp. v. Litton Sys., Inc.,* 720 F.2d 1572, 1580–81, 220 USPQ 1, 7 (Fed.Cir. 1983).

In reaching the conclusion that the invention of the '770 patent would have been obvious, the trial court gave deference to the presumption of validity of the patent and to the evidence of commercial success. It resisted hindsight reconstruction of the invention and did not rely simply on the individual elements of the claim being in the prior art but also on evidence of the level of skill in the art with respect to the making of the combination. No fault can be found in the legal propositions on which the court relied or in the court's method of analysis, and Newell asserts none.

■ Newell first asserts that the trial court erred in reversing the jury's verdict of nonobviousness because the trial court narrowly construed the "securement means" element of the claim, limiting it to "adhesive." Newell does not argue that the claim excludes adhesive, but rather that other means are covered as well.[13] This argument is meritless. A narrow construction of "securement means" was not prejudicial to Newell on the issue of obviousness. The more narrowly a claim is construed, the more likely the claim may be upheld in light of the prior art. J. Landis, *Mechanics of Patent Claim Drafting* 177 (2d ed.1974); 3 E. Lipscomb, *Walker on Patents* § 11:23 at 462 (3d ed. 1985).[14]

■ Newell asserts that to set aside the verdict Kenney had to meet an "almost impossibly lofty standard ... after the jury found that Kenney did not meet its burden of proof." Contrary to Kenney's argument, the trial court was not restricted, in applying the legal test for obviousness to the established facts, either by a quantum of proof or by a "lofty" standard. Quantums of proof relate to proof of facts, not legal conclusions. *See SSIH Equip., S.A. v. United States Int'l Trade Comm'n,* 718 F.2d 365, 375, 218 USPQ 678, 687 (Fed.Cir. 1983) ("[W]e find it inappropriate to speak

in terms of a particular standard of proof being necessary to reach a legal conclusion. Standard of proof relates to specific factual questions."). Our precedent holds that the disputed facts underlying the legal conclusion must be established by clear and convincing evidence, not the ultimate legal conclusion of obviousness itself. *See American Hoist,* 725 F.2d at 1360, 220 USPQ at 770; *Connell,* 722 F.2d at 1549, 220 USPQ at 199.

■ Newell argues that the trial court was required to consider the evidence in the light most favorable to Newell and to draw the "inference" of obviousness in Newell's favor. However, the requirement to draw favorable "inferences" relates only to *factual* inferences, not to legal conclusions based on an established set of facts, even though those facts do not all favor that conclusion. *See Petersen Mfg. Co. v. Central Purchasing, Inc.,* 740 F.2d 1541, 1548, 222 USPQ 562, 567 (Fed.Cir.1984) ("Nor is the court's conclusion on obviousness an adverse inference of fact."); *FMC Corp. v. Manitowoc Co.,* 835 F.2d 1411, 1416–17, 5 USPQ2d 1112, 1116–17 (Fed.Cir. 1987); 10 J. Moore & H. Bendix, *Moore's Federal Practice* § 301.03[1] (2d ed.1988).

■ Newell states as a legal proposition: "The law presumes the existence of findings [by the jury] necessary to support the verdict." In the context of this case that proposition overstates the presumption from the verdict. It is well settled that the jury is presumed to have resolved *disputed* factual issues in favor of the verdict winner. However, it may not be presumed that the jury found facts on which there is no evidence. Nor is the jury free to discard probative admissions and undisputed facts. *See Baumstimler v. Rankin,* 677 F.2d 1061, 1070, 215 USPQ 575, 582–83 (5th Cir.1982); *Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.,* 619 F.2d 660, 664, 205

---

**13.** At first blush, the interpretation limiting "securement means" to "adhesive" appears erroneous. However, it must be understood, as Newell admits, that staples, tacks, and the like do not meet the limitations of the securement means, e.g., "constant securing force" or the overall limitation that Newell admits the shade must be capable of assembly by customers *with-*out tools. Even *intermittent* glue is not within the claim, per the inventor.

**14.** Further, the extra rolls of fabric which Newell asserts are an equivalent of adhesive are also shown in the prior art Gossling '468. *See supra* note 13.

USPQ 1157, 1161 (7th Cir.) (*en banc*), *cert. denied,* 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980); *Panther Pumps & Equip. Co. v. Hydrocraft, Inc.,* 468 F.2d 225, 228, 175 USPQ 577, 579 (7th Cir.1972), *cert. denied,* 411 U.S. 965, 93 S.Ct. 2143, 36 L.Ed.2d 685 (1973); 9 C. Wright & A. Miller, *supra,* at 591.

Newell argues that the Gossling references teach away from a do-it-yourself adjustable shade which does not require use of tools because that art requires "cutting the shade material." Once Corcoran invented his plastic tearable material and publicly disclosed it, however, the problem of having to cut the material was eliminated. The inventor Ferguson himself candidly admitted:

"Q Do you agree, Mr. Ferguson, with the statement that nothing could be more obvious than to mount Corcoran shade material on a roller adapted to be reduced in length?

"A Yes, it was."

Ferguson responded similarly to another question:

"Q [W]ouldn't it be obvious to a man skilled in the art as of February 1974, to put [the Corcoran material] on a roller which could likewise be reduced in length to correspond to the width of the window?

"A That could be put on a telesoping roller, yes.

"Q My question was wouldn't it be obvious to a man skilled in the art that he could do that?

"A Yes, he could put it on a roller."

Ferguson went even further and admitted the significance of the Corcoran material to the success of the invention in the following testimony:

"Q Do you agree, Mr. Ferguson, that you did not contribute the inventive thing which made the Newell shade a commercial success?

"A No, I did not."

Like the inventor in *Calmar, Inc. v. Cook Chemical Co.,* part of the *Graham* trilogy, once another supplied the key ele-

ment, there was no long-felt need or, indeed, a problem to be solved by Ferguson. The following statement in *Calmar* would apply here with changes only in names and date:

The [Ferguson] invention ... rests upon exceedingly small and quite non-technical mechanical differences in a device which was old in the art. At the latest, those differences were rendered apparent in [1974] by the appearance of the [Corcoran shade material], and unsuccessful attempts to reach a solution to the problems confronting [Ferguson] made before that time became wholly irrelevant.

383 U.S. at 36, 86 S.Ct. at 703. It must also be noted again that the Patent Office did not cite the Corcoran shade as prior art and that Newell did not disclose either the Corcoran shade material or the advertising for the Corcoran shade to the examiner.

■ Despite a very strong *prima facie* case of obviousness established by the evidence, Newell argues that the district court was obligated to draw the "inference" of nonobviousness from Newell's evidence of commercial success, copying by others, and other secondary considerations. These arguments were unpersuasive to the trial court and are unpersuasive to us. First, as indicated, obviousness is not a factual inference; second, although these factors must be considered, they do not control the obviousness conclusion. *See Custom Accessories, Inc. v. Jeffrey–Allan Indus., Inc.,* 807 F.2d 955, 960, 1 USPQ2d 1196, 1199 (Fed.Cir.1986); *EWP Corp. v. Reliance Universal Inc.,* 755 F.2d 898, 908, 225 USPQ 20, 26 (Fed.Cir.), *cert. denied,* 474 U.S. 843, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985).

■ Under similar circumstances, in *EWP Corp.,* where the record showed that the invention had become "very successful" in the industry,[15] this court held:

In reaching our conclusion that the invention claimed would have been obvious, we have considered the evidence and arguments pertaining to the so-called "secondary considerations" such as com-

---

**15.** *See EWP Corp.,* 755 F.2d at 908, 225 USPQ at 26 (Davis, J., concurring).

mercial success, licensing, adoption by the industry, etc. Upon full consideration of all the evidence, we remain convinced that it presents a clear and very strong case of obviousness based on admissions and the teachings of the new references above considered.

*Id.* at 907, 225 USPQ at 25. In this case, as well, although the record shows a highly successful product,[16] the record also establishes such a strong case of obviousness based on admissions and the teachings of the prior art, including the improved Corcoran tearable shade material, a reference not considered during examination, that the objective evidence of nonobviousness does not persuade us to reach a contrary conclusion.

We conclude from the established facts that the district court committed no legal error in holding that the invention of claim 1 of the '770 patent would have been obvious within the meaning of 35 U.S.C. § 103.[17] Thus, Newell was not improperly deprived of the jury's verdict that the '770 patent would not have been obvious.

## V

### *Kenney's Cross–Appeal on Attorney Fees*

 Kenney argues that the court erred in not finding this case "exceptional" within the meaning of 35 U.S.C. § 285 (1982) and that Kenney should have been awarded its reasonable attorney fees. The basis for Kenney's argument is that Newell was guilty of inequitable conduct by failing to disclose Corcoran by name as the inventor of the vinyl fabric with invisible tear lines, Corcoran's advertisements in the United States for his shades, and Corcoran's correspondence with Ferguson, and in urging that a 1930 patent to Rice was the closest prior art. The district court held that Newell's conduct did not rise to the level of inequitable conduct and that attorney fees were not warranted in the circumstances of this case. We are not persuaded of factual error or abuse of discretion by the district court in denying attorney fees. *See Reactive Metals Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582, 226 USPQ 821, 824 (Fed.Cir.1985). Thus, the district court's denial of attorney fees to Kenney is affirmed.

### *Costs*

The costs of each appeal shall be borne by the respective appellant.

AFFIRMED.

NEWMAN, Circuit Judge, dissenting.

I respectfully dissent from the panel majority's change in the right to jury trial of the question of unobviousness. The full weight of Supreme Court and Federal Circuit decisions is contrary to their ruling, as are the traditions and laws governing jury verdicts, and the constitutional guarantee.

The Supreme Court has continually recognized the right to jury trial of the question of invention/unobviousness; and the Federal Circuit has been faithful to and has carried forward this constitutional requirement. We have reaffirmed that jury verdicts in patent cases, as jury verdicts in general, are reviewed on the reasonable jury/substantial evidence standard, not decided *de novo* by the appellate court.

The panel majority now holds that it is a violation of Rule 49(a) to ask the jury the question of unobviousness—and that if the jury nonetheless renders a verdict on the question of unobviousness, the most that the verdict is worth is to provide clues as to how the jury viewed the underlying *Graham* factors. Indeed, in the case before us the panel majority holds that although no

---

16. Newell argues that the district court erroneously overlooked some of its evidence of sales. Assuming this is true, because the court acknowledged that the Newell shade was highly successful, we are unpersuaded that this error was harmful.

17. Newell makes no separate argument on the patentability of dependent claims 2, 6, and 7.

To the extent, if any, that Newell disputes any of the material facts relied on by the court, we conclude that no reasonable jury could resolve the underlying factual disputes on this record other than as stated by the trial judge. No error in overturning a material fact has been explicitly argued or shown.

specific *Graham* findings were made by the jury, none were necessary because these factors, according to the majority, are now undisputed.

Thus the panel majority, giving "full and independent review by the court" to the question of unobviousness, conducts its own analysis of the prior art and draws its independent conclusions, giving no deference whatsoever to the jury verdict. Despite the jury trial, the jury has disappeared from the decisional process.

For an appellate tribunal to redecide the question of unobviousness without normal deference to the jury's verdict violates the right of litigants to trial by jury. As stated in *Raytheon Mfg. Co. v. Radio Corp. of America*, 76 F.2d 943, 947 (1st Cir.), *aff'd* 296 U.S. 459, 56 S.Ct. 297, 80 L.Ed. 327 (1935):

> Neither the Congress nor the courts can deprive a litigant of this [Seventh Amendment] right.

We solidly reaffirmed our obedience to this mandate in *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1547, 220 USPQ 193, 197 (Fed.Cir.1983):

> No warrant appears for distinguishing the submission of legal questions to a jury in patent cases from such submissions routinely made in other types of cases. So long as the Seventh Amendment stands, the right to a jury trial should not be rationed, nor should particular issues in particular types of cases be treated differently from similar issues in other types of cases.

Our treatment of patent jury trials like other jury trials, in accordance with history, tradition, and law, has benefited courts, litigants, and the vitality of the patent system. The panel majority now rejects our precedent that had secured patent litigation in the mainstream of the judicial system.

As the appellate court receiving appeals from all the district courts of the nation, today's decision moves patent jury trials into some undefined limbo unique to patent litigation. This new and confusing conflict with our own precedent, of constitutional dimension, can not reassure the bar, or litigants, or trial judges.

I

*Conflict With Federal Circuit Decisions*

The Federal Circuit has held time after time that the jury may decide the question of unobviousness. When the right to jury trial is protected, this protection can not be excised by simply allowing, or requiring, "independent plenary review and determination" of the issue by appellate judges.

The deference that courts must give to jury verdicts, by applying the substantial evidence/reasonable jury standard of review, is the mechanism by which the Seventh Amendment protects the jury system from encroachment. The Federal Circuit, in a large body of decision, has reviewed jury verdicts on unobviousness on this established standard. For example, the court wrote in *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1571, 1 USPQ2d 1081, 1085 (Fed.Cir.1986):

> If then the district court is "convinced upon the record before the jury that reasonable persons could not reach or could not have reached a verdict for the non-mover, it should grant the motion for directed verdict or for JNOV."

(quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir.1983), and citing *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1454–55, 223 USPQ 1161, 1166–67 (Fed.Cir.1984), *cert. denied*, 471 U.S. 1136, 105 S.Ct. 2676, 86 L.Ed.2d 694 (1985)). We concluded that the district court, in failing to apply correctly the substantial evidence standard:

> inappropriately invaded the province of the jury, in derogation of [appellant's] rights as expressed in the Seventh Amendment to the Constitution.

*Id.* at 1571, 1 USPQ2d at 1085.

In *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 898, 221 USPQ 669, 677 (Fed.Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984), the court referred to

> Computervision's appellate burden of showing that no reasonable juror could have concluded that it had failed to prove

facts rendering the '763 patent claims invalid.

We again discussed the standard criteria for review of a jury verdict in *Bio Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 607, 222 USPQ 654, 657 (Fed.Cir.), *cert. denied*, 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984):

> On appeal after denial of a motion for JNOV, appellant must show either: 1) that the jury's presumed or express findings are not supported by substantial evidence or, 2) if the jury's findings were supported by substantial evidence, that the legal conclusions implied from the verdict cannot be supported by those findings.

and in *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 621, 225 USPQ 634, 638 (Fed.Cir.), *cert. dismissed*, 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985):

> In the face of conflicting evidence, testimony, expert opinion, and argument, the jury found [the claims] valid.... We do not determine whether a jury could have reached a different verdict, but whether there is substantial evidence for the verdict that it reached. *Lavender v. Kurn*, 327 U.S. 645, 653 [66 S.Ct. 740, 744, 90 L.Ed. 916] (1946).

Indeed, the Federal Circuit has not wavered from its constitutional obligation to enable jury trial of the question of unobviousness, from the beginning of our existence. *See White v. Jeffrey Mining Mach. Co.*, 723 F.2d 1553, 1558, 220 USPQ 703, 705 (Fed.Cir.1983), *cert. denied*, 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 49 (1984):

> Jeffrey argues that the judge improperly submitted this question of law [obviousness] to the jury and adopted its conclusion as his own, without the benefit of underlying findings of fact. The argument is without merit. Submission of such a question of law to a jury, accompanied by appropriate instructions, is proper.

Our many decisions are consistent; see, for example, *Allen Organ Company v. Kimball Int'l, Inc.*, 839 F.2d 1556, 5 USPQ2d 1769 (Fed.Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 132, 102 L.Ed.2d 104 (1988); *Fonar Corp. v. Johnson & Johnson*, 821 F.2d 627, 631, 3 USPQ2d 1109, 1112 (Fed.Cir. 1987), *cert. denied*, — U.S. —, 108 S.Ct. 751, 98 L.Ed.2d 764 (1988); *Unidisco, Inc. v. Schattner*, 824 F.2d 965, 967, 3 USPQ2d 1439, 1441 (Fed.Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988); *Data Line Corp. v. Micro Technologies, Inc.*, 813 F.2d 1196, 1200, 1 USPQ2d 2052, 2054 (Fed.Cir.1987); *Verdegaal Brothers Inc. v. Union Oil Co. of California*, 814 F.2d 628, 631, 2 USPQ2d 1051, 1052 (Fed.Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987); *Vieau v. Japax, Inc.*, 823 F.2d 1510, 1515, 3 USPQ2d 1094, 1098 (Fed.Cir.1987); *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 425–27, 231 USPQ 276, 279–80 (Fed.Cir.1986); *Mainland Industries, Inc. v. Standal's Patents Ltd.*, 799 F.2d 746, 747–48, 230 USPQ 772, 773 (Fed.Cir.1986); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1571, 1 USPQ2d 1081, 1085 (Fed.Cir.1986); *Shiley, Inc. v. Bentley Laboratories, Inc.*, 794 F.2d 1561, 1566, 230 USPQ 112, 114, (Fed.Cir.1986); *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1454–55, 223 USPQ 1161, 1166–67 (Fed.Cir.1984), *cert. denied*, 471 U.S. 1136, 105 S.Ct. 2676, 86 L.Ed.2d 694 (1985); *Weinar v. Rollform Inc.*, 744 F.2d 797, 223 USPQ 369 (Fed.Cir. 1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 220 USPQ 763 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984); *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 221 USPQ 473 (Fed.Cir.1984); *Railroad Dynamics, Inc. v. A. Stucki Company*, 727 F.2d 1506, 1512–13, 220 USPQ 929, 935 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984); *Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1560, 224 USPQ 259, 263 (Fed.Cir. 1984); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546, 220 USPQ 193, 197 (Fed.Cir.1983).

All of these decisions are contravened by the ruling of the panel majority that a jury verdict on the question of obviousness

must receive "plenary" review by the court.

The panel majority proposes that if underlying facts are disputed the court shall infer the jury's factual findings from the jury's general verdict, and then make, on these inferred findings, a "full and independent" determination of unobviousness. We are not enlightened as to how to achieve this insight into the jury's mind. At best, this procedure requires that which we condemned in *American Hoist & Derrick Co.*, 725 F.2d at 1361, 220 USPQ at 772:

> A district court may not solicit only a legal conclusion from the jury and then act as fact finder preliminary to expressing agreement with its legal determination.

The nature of the verdict requested of the jury is determined by the trial court, in its discretion. The panel majority suggests that special interrogatories should be mandatory. But the courts have recognized the difficulty in presenting meaningful special interrogatories on the many questions raised by multiple prior art references or complex inventions. *See Panther Pumps & Equipment Co. v. Hydrocraft, Inc.*, 468 F.2d 225, 228, 175 USPQ 577, 579 (7th Cir.1972):

> When only two or three narrow issues of fact, such as the date of invention or perhaps the date of first public sale, determine the issue of patent validity, it may be entirely appropriate to submit special interrogatories to the jury. But if, as in this case, one party contends that as many as 32 separate fact questions [on obviousness] must be resolved, the trial judge certainly may consider it inappropriate to use the special interrogatory procedure. [Footnote omitted]

As the court in *Panther Pumps* observed, this matter is within the unreviewable discretion of the trial judge. *See* 9 Wright & Miller, *Federal Practice and Procedure: Civil* (1971):

> § 2505: Whether a special or general verdict shall be returned rests in the discretion of the trial court.
>
> § 2511: The decision whether to use a general verdict accompanied by special interrogatories, as authorized by Rule 49(b), is similarly committed to the unreviewable discretion of the trial judge.

This court agreed in *Railroad Dynamics*, 727 F.2d at 1515, 220 USPQ at 938:

> District courts have broad authority and discretion in controlling the conduct of a trial. That authority extends to the form by which juries return verdicts, Fed.R.Civ.P. 49, and will not be interfered with unless an abuse of discretion is shown.

We recognized the opportunity for prejudice resulting from the compulsory use of interrogatories, stating in *Weinar*, 744 F.2d at 809, 223 USPQ at 376:

> [S]ubmission of interrogatories is not in all cases an unmixed blessing. The decision to submit interrogatories, and the precise language in which they are couched, can have an untoward effect on a verdict, if certain elements of the trial or the evidence are thereby overly emphasized in the jury's mind.

The majority creates a fresh conflict with these decisions, in favoring the submission of interrogatories or "mandatory alternative instructions" to the jury. Op., note 8. A "mandatory alternative instruction" would instruct the jury how it must decide the ultimate question, based on every combination of factual findings that the jury might make. For the *Panther Pumps* example of thirty-two separate fact questions, the number of such combinations of findings is two to the thirty-second power or 4,294,967,296.[1] Such instructions, even where feasible, inevitably presume the judge's conclusion, and could prejudice the jury's verdict. Professor Moore remarked:

> The notion that issues of "fact" are easily framed is unsound. And the jury is not, nor should it become a scientific fact

---

1. If there were only six separate fact questions the number of combinations of yes-no answers is sixty-four, setting the number of mandatory alternative instructions [*e.g.,* if the jury finds fact A is yes and B is no and C is yes, etc, then

the jury must hold as follows ...]. Even in simplified form this can not be a preferred mode of jury verdict, as the court in *Panther Pumps* recognized.

finding body. Its chief value is that it applies the "law", oftentimes a body of technical and refined theoretical principles and sometimes edged with harshness, in an earthy fashion that comports with "justice" as conceived by the masses, for whom after all the law is mainly meant to serve.

*Moore's Federal Rules*, note to Rule 49, p. 1148 (1949), quoted in S. Driver, *The Special Verdict—Theory and Practice*, 26 Wash.L.Rev. 21, 23 (1951).

The panel majority imposes on the trial courts a procedure that is unique to patents, untested, and difficult to administer. As stated by H.T. Markey in *On Simplifying Patent Trials*, 116 F.R.D. 369, 370 (1987):

There is neither reason nor authority for employing in a patent trial procedures and practices different from those employed in any other civil trial. Indeed, reason and authority mandate the contrary.

Chief Judge Markey continued the analysis:

To say that a jury may never decide a question of law is to read out of existence Rule 49(b), providing for general verdicts, and Rule 51, providing for instructions on the law, as well as to render meaningless all the rules developed for handling conflicts between the fact findings and the ultimate legal conclusion reached by the jury on its way to its general verdict. Facile phrases like "facts are for the jury; law is for the court" appear nowhere in the Rules.

*Id.* at 371–72.

We have regularly admonished ourselves to apply the proper standard of review, and that an appellate panel is not entitled to "reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The reason is self-explanatory when, as in the case here appealed, the appellate tribunal did not hear the testimony, observe the witnesses, see the demonstrations, listen to explanations of the prior

art and the claims, learn what was the state of this art at the time in question, or analyze the long-felt need and commercial impact. Appellate briefs and selections from the record can not duplicate the events of trial.

Heretofore this court has respected the constitutionally protected tradition of jury trial. Indeed, were the court in doubt, any doubt must be resolved in favor of the jury tradition:

Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.

*Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935).

In stark contrast is the ruling now offered, contravening all of these decisions, holding that when the facts are "established", "the trial court's conclusion on obviousness is subject to full and independent review by this court", op. at 762; the jury verdict is disregarded, for "it is not the function of the jury to pick and choose among established facts relating to obviousness". Op. at 763. This holding can not be squared with protected jury verdicts. It also violates Supreme Court precedent, as I shall discuss in Part II, *post*.

In the case before us the panel majority does not mention the jury instructions, or whether a reasonable jury could have reached the verdict of unobviousness it here reached, or whether there was substantial evidence before the jury to support its verdict of unobviousness. Nor does the panel majority discuss what facts the jury is presumed to have found, holding instead that "the facts" are undisputed on appeal. The panel majority thus has analyzed the prior art afresh, found the differences from the patented invention, used the district court's finding of the level of ordinary skill, and stated that it gives no weight to the evidence of long-felt need and commercial success; all entirely independent of the jury.

Discarded is the presumption that the jury considered the evidence before it, see *DMI, Inc. v. Deere & Co.*, 802 F.2d at 425, 231 USPQ at 279:

> [The jury's] answer ... on obviousness must, in light of the instructions it received [on the *Graham* factors], be taken as establishing that the jury considered them.

and discarded in the reasonable jury/substantial evidence standard of review of the jury's verdict. Our precedent, which has uniformly authorized litigants to take the issue of obviousness to a jury of citizens, is contravened.

## II

### *The Constitutional Issue*

The Seventh Amendment[2] right to jury trial, and to jury verdict that receives the deference normally due to jury verdicts, derives from the traditional right to trial of the issue at common law. Where this right exists it may not be taken away by a court, even indirectly—such as by relabeling a traditional jury question as one of pure law, severed from its factual components; or by allowing the jury to find historical facts while removing from the jury the verdict on the ultimate question. The Supreme Court stated in *Walker v. New Mexico & So. Pac. R. Co.*, 165 U.S. 593, 596, 17 S.Ct. 421, 422, 41 L.Ed. 837 (1897):

> The Seventh Amendment ... requires that questions of fact in common law actions shall be settled by a jury, and that the court shall not assume directly or indirectly to take from the jury or to itself such prerogative.

The Court has frequently reinforced this fundamental right.

The Seventh Amendment preserves the right to jury trial of issues that were decided by jury at English common law at the time the amendment was adopted in 1791. *Dimick v. Schiedt*, 293 U.S. 474, 476, 55 S.Ct. 296, 297, 79 L.Ed. 603 (1935); Fleming, *Right to a Jury Trial in Civil Ac-*

*tions*, 72 Yale L.J. 655, 655 (1963). In considering applicability of the Seventh Amendment we need not resolve whether the question of unobviousness, in modern analysis, should be classified as a question of fact or law or any combination thereof; we determine only whether its jury determination partakes of constitutional protection.

Pre–1791 English patent jury cases treated the issue of invention as one of fact for the jury. *See, e.g., Bramah v. Hardcastle*, King's Bench, N.P., Trin.T., 1789:

> His lordship concluded with telling the jury the patent was void, the invention not being new; and that they should find a verdict for the defendant.
>
> Verdict was given for the plaintiff, however, and was not disturbed.

*Rex v. Arkwright*, King's Bench, N.P., June 25, 1785:

> Butler, J.: Gentlemen of the jury: ... As to the other points, there are two: first, whether it is a new invention.... [I]n the case of an invention many parts of a machine may have been known before, yet if there be anything material and new which is an improvement of the trade, that will be sufficient to support a patent....

*Arkwright v. Nightingale*, Common Pleas, N.P., Feb. 17, 1785 (charge to jury discussing requirements for patentability); *Morris v. Bramsom*, King's Bench, N.P., 1776 (jury trial of an action for infringement, including defense that the patent "was only for an addition to an old machine.")

The continuing right to a jury trial was implemented in the United States. Patent cases were tried at law to a jury when damages were requested, and at equity to the court when injunction or other equitable relief was requested. In the quite large number of reported actions at law, juries gave verdicts on questions of patent validity, including novelty, invention, prior use or sale, derivation, and sufficiency of disclosure, as well as on infringement and

---

**2.** The Seventh Amendment states:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

damages; all questions that arose, and still arise, in patent cases.[3]

There is an overwhelming volume of precedent holding that the issues of invention (as unobviousness was called before 1952) and novelty (often used to include invention, *see* Curtis, *Law of Patents* (4th ed. 1873) § 445) are questions for the jury. *See, e.g.,* the following Supreme Court cases (citations and footnotes omitted):

*Hotchkiss v. Greenwood,* 52 U.S. (11 How.) 248, 264–65, 267, 13 L.Ed. 683 (1851):

> The court ... [properly] charged the jury that, if [inter alia] no more ingenuity or skill [was] required to construct the knob in this way than that possessed by an ordinary mechanic acquainted with the business, the patent was invalid, and the plaintiffs were not entitled to a verdict.
>
> ....
>
> Now if the foregoing view of the improvement claimed in this patent be correct, it is quite apparent that there was no error in the submission of the questions presented at the trial to the jury....

*Battin v. Taggert,* 58 U.S. (17 How.) 74, 85, 15 L.Ed. 37 (1854):

> The jury are also to judge of the novelty of the invention....

*Turrill v. Railroad Co.,* 68 U.S. (1 Wall.) 491, 512, 17 L.Ed. 668 (1863):

> [T]here was an important question of fact which should have been left to the jury, whether ... any of the prior movable press-blocks, as is shown in the admission, were substantially the same as the machine of the patentee. American authorities, at least, hold that every such question is one for the jury....

*Bischoff v. Wethered,* 76 U.S. (9 Wall.) 812, 814–15, 19 L.Ed. 829 (1869):

> [In] all such cases [where court sets verdict aside as against the weight of evidence] the question would still be treated as a question of fact for the jury and not as a question of law for the court. And under this rule of practice, counsel would not have the right to require the court, as matter of law, to pronounce upon the identity or diversity of the several inventions described in the patents produced. Such, we think, has been the prevailing rule in this country, and we see no sufficient reason for changing it.

*Stimpson v. Woodman,* 77 U.S. (10 Wall.) 117, 125, 19 L.Ed. 866 (1869) (Clifford, J., dissenting):

> [B]ut the question whether a particular invention is new and useful, or whether it did require any invention to produce it, as compared with what existed before, are everywhere admitted to be questions of fact for the jury, and certainly no such question is open here for the determination of this court under this bill of exceptions.

*Tucker v. Spalding,* 80 U.S. (13 Wall.) 453, 455, 20 L.Ed. 515 (1871):

> Whatever may be our personal opinions of the fitness of the jury as a tribunal to determine the diversity or identity in principle of two mechanical instruments ... that question must be submitted to the jury, if there is so much resemblance as raises the question at all. And though the principles by which the question must be decided may be very largely propositions of law, it still remains the essential nature of the jury trial that while the court may on this mixed question of law and fact, lay down to the jury the law which should govern them, so as to guide them to truth, and guard them against error, and may, if they disregard instructions, set aside

---

**3.** This court has regularly affirmed the right to jury trial on such issues, although they have been labeled as questions of "law". *See, e.g., Spectra-Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1533, 3 USPQ2d 1737, 1743 (Fed.Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987) ("The court may submit legal issues such as enablement to the jury under Rule 49(a), but if it does, the court may not make subsequent findings which overrule an implicit and inherent finding of the jury"); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,* 758 F.2d 613, 623, 225 USPQ 634, 640 (Fed.Cir.), *cert. dismissed,* 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed. 2d 326 (1985) (question of on sale resolved by jury); *Allen Organ Company v. Kimball Int'l, Inc.,* 839 F.2d 1556, 1558, 1566, 5 USPQ2d 1769, 1770–71, 1777 (Fed.Cir.1988) (questions of on sale, public use, and enablement resolved by jury).

their verdict, the ultimate response to the question must come from the jury.

*Keyes v. Grant*, 118 U.S. 25, 36–37, 6 S.Ct. 974, 980–981, 30 L.Ed. 54 (1886):

[Whether differences from the prior art] would not require the exercise of the faculty of invention, but would be suggested by the skill of an experienced workman.... was a question of fact properly to be left for determination to the jury, under suitable instructions from the court upon the rules of law, which should guide them to their verdict. And there was evidence upon both sides of the issue sufficient to require that it should be weighed and considered by the jury in the determination of the question....

*Adams v. Bellaire Stamping Co.*, 141 U.S. 539, 541–42, 12 S.Ct. 66, 67, 35 L.Ed. 849 (1891):

On the trial special questions were submitted to the jury, and they found [inter alia] that the Irwin patent disclosed no improvement which required invention as distinguished from mere mechanical skill or judgment....

*Thomson Spot Welder Co. v. Ford Motor Co.*, 265 U.S. 445, 446, 44 S.Ct. 533, 534, 68 L.Ed. 1098 (1924):

The question whether an improvement requires mere mechanical skill or the exercise of the faculty of invention, is one of fact; and in an action at law for infringement is to be left to the determination of the jury.

The Supreme Court has recognized the role of the directed verdict as appropriate in patent as in other jury trials, when the criteria are met; *e.g., Heald v. Rice*, 104 U.S. 737, 749, 26 L.Ed. 910 (1881); *Fond du Lac County v. May*, 137 U.S. 395, 403, 11 S.Ct. 98, 100, 34 L.Ed. 714 (1890); *Market Street Cable Ry. Co. v. Rowley*, 155 U.S. 621, 625, 15 S.Ct. 224, 226, 39 L.Ed. 284 (1895); *Singer Mfg. Co. v. Cramer*, 192 U.S. 265, 275, 24 S.Ct. 291, 295, 48 L.Ed. 437 (1904).

The Court has also referred to the complexity of these jury questions, and defined them as questions of ultimate fact on which depends the question of legal liability:

*United States v. Esnault–Pelterie*, 299 U.S. 201, 205, 57 S.Ct. 159, 161–62, 81 L.Ed. 123 (1936):

Validity and infringement are ultimate facts on which depends the question of liability. In actions at law they are to be decided by the jury. If the evidence is not sufficient to establish validity and infringement, it is the duty of the trial court to direct a verdict for defendant.

*United Gas Public Service Co. v. Texas*, 303 U.S. 123, 140, 58 S.Ct. 483, 491–92, 82 L.Ed. 702 (1938):

Cases at law triable by a jury in the federal courts often involve most difficult and complex questions, as, for example, in patent cases at law presenting issues of validity and infringement.

The Supreme Court unequivocally established that when the question of invention has been placed at issue and tried to a jury, neither the trial court nor any appellate court decides the question of validity or infringement *de novo*, independent of the jury verdict. The courts have no power to remove the constitutionally protected benefits of a jury trial.

The district and circuit courts implemented the general rule that invention, in actions at law, is determined by the jury. The rare exception points up the great weight of this jurisprudence. A representative sampling includes: *Hall v. Wiles*, 11 F.Cas. 280, 283 (S.D.N.Y.1851) (No. 5954) ("The question of whether the patented carriage is a new improvement is one of fact ... and, except that there are some legal principles bearing on the question of fact, and as to which the court may aid you, it is a question which must be determined by the good sense and sound judgment of the jury"); *Poppenhusen v. Falke*, 19 F.Cas. 1052, 1054 (S.D.N.Y.1862) (No. 11,280) ("the question whether [the patented device] required invention or not, was one to be submitted to the jury"); *Holmes v. Truman*, 67 F. 542, 543 (9th Cir.1895) (trial court correctly refused to instruct the jury that there was no invention in the plaintiffs' cart).

*See also Heide v. Panoulias*, 188 F. 914, 917 (2d Cir.1911) ("the trial judge would have committed error, had he decided these questions of validity and infringement, instead of sending them to the jury"); *Fountain Electrical Floor Box Corp. v. Trustees of Masonic Hall and Asylum Fund*, 210 F. 169, 171–72 (S.D.N.Y.1913) (jury finding of invention depends on the language and meaning and construction of a number of patents and the varying evidence of experts); *General Motors Corp. v. California Research Corp.*, 9 F.R.D. 565, 567, 83 USPQ 282, 283–84 (D.Del.1949) (validity and infringement are clearly ultimate facts and may be determined by a jury); *Reynolds–Southwestern Corp. v. Dresser Industries, Inc.*, 372 F.2d 592, 595, 152 USPQ 530, 532 (5th Cir.1967) (validity and infringement are ultimate facts, to be decided by the jury. If the evidence is not sufficient to establish validity and infringement, the trial court must direct a verdict for the defendant.)

The contrary view, espoused by the panel majority, found a rare adherent, *see Prepayment Car Sales Co. v. Orange County Traction Co.*, 221 F. 939, 941 (2d Cir.), *cert. denied*, 238 U.S. 626, 35 S.Ct. 664, 59 L.Ed. 1495 (1915) (where no controversy on the prior art or the meaning of the claims, the question of invention becomes one of law for the court); *Swofford v. B & W, Inc.*, 395 F.2d 362, 364–68, 158 USPQ 72, 76 (5th Cir.), *cert. denied*, 393 U.S. 935, 89 S.Ct. 296, 21 L.Ed.2d 272 (1968) (obviousness is a question of law, subject to *de novo* determination by the trial judge, independent of the jury verdict).

In 1952 the three basic conditions of patentability were codified in three separate sections of Title 35—the requirement of utility in Section 101, the requirement of novelty in Section 102, and the requirement of non-obviousness in Section 103. Codification does not, of course, supersede the Seventh Amendment. The Supreme Court in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966), a non-jury trial, recognized that these requirements have existed since the adoption of the Constitution. The Court wrote:

> Innovation, advancement, and things which add to the sum of useful knowledge are inherent requisites in a patent system which by constitutional command must "promote the Progress of ... useful Arts." This is the *standard* expressed in the Constitution and it may not be ignored. [Emphasis in original].

383 U.S. at 6, 86 S.Ct. at 688, 148 USPQ at 462. The Federal Circuit early made clear our respect for Supreme Court and constitutional mandate, reaffirming that it is not error to submit the question of obviousness, among other patent issues, for jury verdict; *see* Part I, *ante*.

It is not available to two judges of this court to overrule two centuries of constitutional right, simply by redefining a protected jury question as one of pure law independent of its factual components, proposing thereby to remove the question from jury verdict. In the case at bar, the litigants have the right to have the question of obviousness decided by the jury, and to have the jury verdict reviewed on the established substantial evidence/reasonable jury standard. That right has been denied by the panel majority, who instead applied their new standard of review and, on that standard, found the Ferguson patent invalid for obviousness.[4]

### III

*The Proposed Reclassification of Unobviousness as a Question of Pure Law*

The justification for the panel majority's "plenary" determination of a question that was tried to and decided by the jury is that the question of obviousness is one of pure law, severable from, and severed from, its factual components. Holding that the jury can not "pick and choose among established facts", op. at 763, the panel majority has analyzed the prior art, determined the differences, evaluated the objective evi-

---

4. The rule of the Federal Circuit is that we are bound by our prior decisions until they are overruled by a majority of the active judges sitting *in banc*. This court *in banc* declined to adopt the position of the panel majority.

dence, weighed its significance, and then decided the question of obviousness as a matter of "law".

This classification depends for its sole authority on our cases reviewing bench trials, not jury trials. Thus our holding in *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1566–68, 1 USPQ2d 1593, 1595–97 (Fed.Cir.), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987), a bench trial, is discovered to present a conflict with our lengthy precedent governing review of jury verdicts, a conflict said to be reconcilable only if the jury verdict is stripped of its authority.

As I shall discuss, it is not controlling whether unobviousness is most precisely designated as a question of law based on underlying facts, as the Federal Circuit prefers, or as a question of ultimate fact based on historical facts, as the commentators like to call such mixed questions of law and fact.[5] The right to jury trial of the question is protected by the Seventh Amendment, and does not lose this protection by changing the label.

Scholars have pointed out that the law/fact distinction is both difficult and unnecessary to make in the context of a jury verdict, for the jury necessarily applies law to facts. 1 S. Childress and M. Davis, *Standards of Review*, p. 194 (1986) [hereinafter *Childress*]:

> [T]he point is that submitting the case to the jurors means that they necessarily apply law as they find facts, and in that function something of a lawmaking process develops that belies a simple breakdown of fact as the jury's turf while law belongs to judges.

Indeed, the Federal Circuit early recognized the point. In *Railroad Dynamics*, 727 F.2d at 1514–15, 220 USPQ at 937, the court stated:

[A] jury necessarily reaches a legal conclusion, presumably in accord with the judge's instructions on the law, before it reaches its general verdict. Moreover, it is idle to speak of the jury solely as fact finder, so long as instructions on the law and general verdicts remain elements of a jury trial.

When and if Rules 49, 50, and 51, Fed.R.Civ.P., are repealed, there may be room for the restriction of juries to a fact finding role and for prohibition of general verdicts in patent or other types of jury trials. Until that day, a prohibition of general verdicts (and disregard of the findings and legal conclusions a jury must make in reaching those verdicts) cannot be accomplished by judicial fiat.

This practice of the Federal Circuit has been in full harmony with appellate treatment of jury trials of complex issues. As *Louis, infra*, summarizes it, categories variously referred to as "application of the law to the facts" or "ultimate facts" do not thereby change their entitlement to jury verdict and to appropriate deference on review:

> Ultimate facts going to the merits are usually reviewed [from jury verdicts] narrowly and deferentially like questions of historical fact even when the underlying historical facts are not in dispute. Indeed, with the exception of a few specific substantive areas like constitutional and contract or commercial law, mixed questions going to the merits are almost presumptively classified as question of fact, assigned to the jury, and reviewed narrowly on appeal from any fact finder.

M.B. Louis, *Allocating Adjudicative Decision Making Authority between the Trial and Appellate Levels: A Unified View of the Scope of Review, The Judge/Jury Question, and Procedural Discretion*, 64 N.C.L.Rev. 993, 1003–04 (1986) [herein

---

**5.** Note the comment in *Armour & Co. v. Wilson & Co.*, 274 F.2d 143, 155, 124 USPQ 115, 124–25 (7th Cir.1960):

> We have come to speak of questions of "facts", "primary facts", "subsidiary facts", "evidentiary facts", "ultimate facts", "physical facts", "documentary facts", "oral evidence," "inferences," "reasonable inferences," "findings of fact," "conclusions," "conclusions of law," "questions of fact," "questions of law," "mixed questions of law and fact," "correct criteria of law," and so on *ad infinitum*. The simple answer is that we are all too frequently dealing in semantics, and our choice of words does not always reflect the magic we would prefer to ascribe to them. [Footnote omitted]

*Louis* ]. *See also* Thayer, *"Law and Fact" in Jury Trials,* 4 Harv.L.Rev. 147, 169 (1890).

### A. The Law of 35 U.S.C. § 103

"Law" is a body of general principles and rules, predicated in advance, awaiting application to particular facts as may arise. S. Weiner, *The Civil Jury Trial and the Law–Fact Distinction,* 64 Calif.L.Rev. 1867, 1869 (1966). Law does not deal with the circumstances of a particular situation; it announces what is to be the rule in all cases. F. Bohlen, *Mixed Questions of Law and Fact,* 72 U.Penn.L.Rev. 111, 112 (1924). *See* R. Brown, *Fact and Law in Judicial Review,* 56 Harv.L.Rev. 899, 901 (1943):

> Questions of law, therefore, are those which are concerned with "... the inquiry whether there be any such rule or standard, the determination of the exact meaning and scope of it, the definition of its terms, and the settlement of incidental questions, such as the conformity of it, in the mode of its enactment, with the requirements of a written constitution".

(quoting Thayer, *A Preliminary Treatise on Evidence* 193 (1898)).

The law of obviousness, the general rule in all cases, is set in 35 U.S.C. § 103:

> **§ 103. Conditions for patentability; non-obvious subject matter.**
>
> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The rule of Section 103 has been elaborated by the courts, as a matter of judge-made law. For example, the courts have established the rule that synergism is not a requirement for unobviousness of combination inventions; the rule that a structurally obvious chemical compound that exhibits unexpected properties may be deemed unobvious; the rule that objective indicia must be considered along with the other *Graham* factors; all these rules comprising a common law of unobviousness.

But these rules do not establish how the evidence as to any specific case will be weighed, or which technological or commercial facts will support a ruling of unobviousness and which will not. The conclusion of unobviousness *vel non* is not dictated as a matter of law; it is reached by weighing and evaluating the facts of the particular case. We have long recognized the fact-dependency of obviousness determinations. *See, e.g., In re Durden,* 763 F.2d 1406, 1410, 226 USPQ 359, 361 (Fed. Cir.1985):

> We reiterate another principle followed in obviousness issue cases, which is to decide each case on the basis of its own particular fact situation. What we or our predecessors may have said in discussing different fact situations is not to be taken as having universal application.

The conclusion is not severable from the underlying facts of the particular case, but is determined by the weighing and evaluation of these facts *by the trier of fact,* through the eye of the person that the trier of fact has found to be of ordinary skill in the technology.

Misperception of this process may have arisen because the evidence in obviousness determinations is often documentary prior art whose existence is unchallenged: often readable by judges, usually included in appellate records. Although credibility of documentary evidence is not often at issue, the corollary for technological information is its evaluation and weight; along with all other evidence. *See Richdel, Inc. v. Sunspool Corp.,* 714 F.2d 1573, 1580, 219 USPQ 8, 12 (Fed.Cir.1983) ("The issue is the obviousness of the *claimed invention,* and that issue can be resolved only after *all* relevant evidence of nonobviousness, including so-called 'secondary considerations' if any, has been taken into account.") (Emphasis original). Even when the existence of the prior art is undisputed, the

weighing of the evidentiary factors may be highly disputed, as in the case at bar. The weight of these factors is not severable from the factors themselves, and is not assigned to a different decision-maker. See the discussion in *Louis, supra*, at 1033, of "the virtually settled rule that mixed questions cannot be taken from the jury simply because the historical facts are not in dispute".

The jury applies the law of unobviousness, on which it has been instructed by the court, to all the evidence, in light of the burden of proof, and determines the ultimate question of whether the requirements of Section 103 are met. Thereafter, in accord with Federal Circuit precedent:

> Appellate review of the jury verdict is limited to whether the applicable legal principles were identified and applied correctly and whether the findings of ultimate fact exceed the limits of reasonableness.

*Louis, supra*, at 999.

The question of sufficiency of the evidence may be raised on motion for directed verdict, and the trial court may decide that as a matter of law the evidence is insufficient to create an issue for resolution by the jury, when all inferences are drawn in favor of the non-movant. 9 Wright & Miller, *Federal Practice & Procedure: Civil* § 2524 (1971). *See generally* W. Blume, *Origin and Development of the Directed Verdict*, 48 Mich.L.Rev. 555 (1950). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986):

> the inquiry under each [motion for summary judgment and for directed verdict] is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

The panel majority appears to confuse the question of sufficiency of evidence, which is a matter of law, with the status of the ultimate question, which may be historical fact, or ultimate fact based on historical fact, or a mixed law-fact question of various labels.

### B. Bench Trials and Jury Trials

Courts and commentators generally have rejected proposals that modern juries should be limited to special verdicts of narrow historical facts and denied the verdict on the ultimate question. As discussed in *Childress* with respect to the question of negligence, it is the trier of fact who has seen the evidence and heard the witnesses and determined who is the "ordinary person", and is best capable of determining what such a person would have done or should reasonably have done in the specific situation that existed. *Childress, supra*, at 141:

> Treating negligence as fact is the usual course even among courts that call it a mixed law-fact issue apparently recognizing that whatever the policies supporting deference, negligence presents a classic example of applying a legal standard, normally reasonableness, to established facts in determining a conclusion of legal liability.

The Supreme Court has made plain that it is the jury that applies the legal standard of reasonableness. *See, e.g., Wilkerson v. McCarthy*, 336 U.S. 53, 62, 69 S.Ct. 413, 417–18, 93 L.Ed. 497 (1949):

> We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these [negligence] as well as others.

(quoting *Jones v. East Tennessee R. Co.*, 128 U.S. 443, 445, 9 S.Ct. 118, 118–119, 32 L.Ed. 478 (1888)).

Precedent illustrates the analogous application, by the jury, of the legal standard of the person of ordinary skill to the facts of the prior art. *See* Parts I and II, *ante*. Whether classified as mixed law-fact, as law based on fact, or as ultimate fact, the question of unobviousness may be decided by the jury. When so decided, it is reviewed on the usual reasonable juror/substantial evidence standard.[6]

---

6. The only exception to the normal deference on review of jury verdicts appears to be the emerg-

The panel majority's proposed "full and independent" determination of the question of unobviousness does no damage if applied to review of a bench trial, wherein the district court's decision is accompanied by the detailed findings and conclusions of Rule 52(a). *Childress, supra,* at 194 explains that a judge's ruling after a bench trial involving interdependent questions of law and fact may indeed be reviewed more freely than a jury's verdict on the same issue:

> That application of law to facts is the jury's job, and on appeal it is generally not questioned in the same way that a judge's findings on a bench trial appeal, under Federal Rule of Civil Procedure 52(a), might be called *mixed law-fact* and then split into the component parts, with the law part going more freely to the reviewing court. In this way the law-fact issue in jury trials is more a process than a rude dichotomy.
>
> In the process some issues called mixed law-fact in bench trials—and often reviewed more freely there—are unquestionably submitted to the jury. Negligence is the classic example.... [Emphasis in original, footnote omitted]

The standard of review of the jury verdict does not lose its requisite deference merely because a bench trial would be reviewed more freely.

> Neither Constitution nor statutes preclude the courts from applying different rules to the findings of fact of trial judges from those applied to the findings of juries....

Stern, *Review of Findings of Administrators, Judges and Juries: A Comparative Analysis,* 58 Harv.L.Rev. 70, 83, 86 (1944).

Thus the traditional role of the jury in patent cases was undisturbed by our holding in *Panduit Corp.,* 810 F.2d at 1566–68, 1 USPQ2d at 1595–97, that unobviousness is a conclusion of law based on facts. *Panduit* did not eliminate decision of the ultimate question of obviousness by jury verdict, or change the standard of appellate

review. Indeed, to hold otherwise would place us in direct conflict with the Seventh Amendment: a situation not intended by this court.

### C. The Better Administration of Justice

The Supreme Court has reemphasized the special role of the trier of fact as being in the better position to decide questions that have been fully explored by the trial process. The Court discussed the importance of the sound administration of justice, in deciding which tribunal is better positioned to decide mixed questions of law and fact. *Pierce v. Underwood,* — U.S. ——, 108 S.Ct. 2541, 2547, 101 L.Ed.2d 490 (1988):

> We recently observed, with regard to the problem of determining whether mixed questions of law and fact are to be treated as questions of law or of fact for purposes of appellate review, that sometimes the decision "has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question." *Miller v. Fenton,* 474 U.S. 104, 114, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1985).

Even if an appellate court could give adequate attention to a case that occupied weeks or months of trial time, it can not be preferable to require "full and independent" redetermination by trial and appellate judges of the question that the jury decided. The principle of granting a certain deference on review of a jury's verdict is founded in practicality as well as logic.

In all events, however the question of obviousness is classified, there is an inalienable right to jury trial of the issue. The panel majority holds, again generating conflict with our own precedent, that the Federal Rules do not permit asking the jury the question of nonobviousness. While the procedural rules have changed over the years since 1791, the constitution

ing category of "constitutional fact", discussed in *Bose Corp. v. Consumers Union of United States,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984), in the context of First Amendment libel and defamation suits. *See Louis, supra,* at 1029–32; *Childress, supra,* § 2.19.

continues to protect the substantive right to a jury trial on protected issues.

The "right," which is secured by the Seventh Amendment is not a matter of procedure but of substance, and one possessing such right cannot be deprived of it by any means short of an amendment to the Constitution.

*Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 213, 36 S.Ct. 595, 60 L.Ed. 961 (1916). Rule 49 is not a vehicle for defeating a constitutionally protected right to jury trial.

I have not discussed the pertinence to patent litigation of the deep-seated faith that free peoples place in the jury system. *See, e.g.*, Hill, *The Right to a Jury Trial in Complex Litigation*, in "1980 Patent Law Annual; The Southwestern Legal Foundation", New York, Matthew Bender, 1980, 261, 275:

> ... we should be careful that we do not materially trespass on perhaps the most outstanding feature of the jury system— the right of our citizens through the system to inject their common sense of justice into our judicial decisions, which can and often do affect the jurors' daily lives as well as those of the litigants. Every alternative should be fully explored before disenfranchising a litigant's cherished right to a jury trial and our citizens' right to have a part in making the law which governs them.

It is this right that was secured by the Seventh Amendment. It is not ours to defeat.

## IV

### *The Presumption of Validity*

I must also dissent from the panel majority's rejection of the presumption of validity in obviousness determinations. The majority holds that only "the disputed facts underlying the legal conclusion must be established by clear and convincing evidence, not the ultimate legal conclusion of obviousness itself." Panel op. at 767.

The requirement of clear and convincing evidence of invalidity is grounded on the statutory presumption of validity, 35 U.S.C. § 282. The presumption arises from the Patent Office's final decision to grant the patent: the examination that not only finds the prior art, but weighs and evaluates the technological and objective evidence, based on scientific experience and legal expertise. *American Hoist & Derrick*, 725 F.2d at 1358–59, 220 USPQ at 770. Included in the examination is review of all evidentiary factors pertinent to 35 U.S.C. § 103. Thus the presumption is based not only on the identification of prior art and the differences from the claimed invention, but on the administrative decision of unobviousness. It is curious indeed to hold that only the former administrative actions are entitled to its benefit, accepting the expertise of the examiner as searcher but not as evaluator.

The question of obviousness is the most frequently litigated argument for patent invalidity. *See* Note: *A Proposal to View Patent Claim Nonobviousness From the Policy Perspective of Federal Rule of Civil Procedure 52(a)*, 20 Mich.J.L.Ref. 1157, 1158–59 (1987) (citing 3 Chisum, Patents § 11.06[3][c] at 11–102). The evidentiary burden of clear and convincing evidence has been imposed in literally hundreds of such decisions, based on Federal Circuit requirement. The panel majority, by undertaking for itself to determine unobviousness in the first instance, simply places the appellate tribunal in the role of patent examiner, bringing the judges' technological and scientific expertise to bear, giving no deference to that of the patent examiner.

In the case before us, the jury was instructed that Kenney had the burden of proving invalidity of the Ferguson patent by clear and convincing evidence. By changing the weight of this burden, the panel majority creates another conflict with our precedent.

## V

### *Validity of the Ferguson '770 Patent*

The verdict here at issue, wherein the jury held that the Ferguson '770 patent had not been proved invalid, must be reviewed on the established standard, for the court

has not *in banc* changed the law governing appellate review of jury verdicts.

On a party's motion for judgment n.o.v. (or for directed verdict, as here), the trial judge may grant the motion

only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment;

and in doing so the court

must view the evidence in the light and with all reasonable inferences most favorable to the party who secured the jury verdict.

5A *Moore's Federal Practice* ¶ 50.07[2] at 50–64, 50–70 (1987) (footnotes omitted). That standard is not followed in the "full and independent" review undertaken by the panel majority. When the correct standard is used, the jury verdict is sustained.

This litigation, reported at *Newell Companies, Inc. v. Kenney Mfg. Co.*, 606 F.Supp. 1282, 226 USPQ 157 (D.R.I.1985), is about commercial rights to the do-it-yourself-without-tools window shade: a device of solid practicality. The jury was advised—as may have been common knowledge—that the previous way of obtaining window shades was to take your measurements to a hardware store where a clerk would saw, cut, glue, and staple the components to fit your measurements; the customer often returning to the store for a repeat attempt. The district court stated: "Until the time of the claimed invention, store-cut shades were the state of the art." *Id.* at 1286, 226 USPQ at 158. Newell found a way to avoid all this: a simple way; a new way, as Kenney has acknowledged.

The Ferguson invention is not a feat of engineering. It is a simple kit whereby a householder, without tools, can easily fit a shade to his/her own window, of any width and height. It was a smashing success. It bumped from the shelves of K–Mart the entire paraphernalia that householders had previously been condemned to. And the manufacturers of that paraphernalia, having once rejected Ferguson's invitation to make the do-it-yourself-without-tools product, rushed to copy it. *Id.* at 1286–87, 226 USPQ at 159.

The scope of the patent claims is quite narrow. They are not simply to a combination of old shade and old roller, but to a detailed, specific, novel combination of all the elements of a shade that is "width adjustable and installable by the consumer without the use of tools or cutting elements."

That a claimed invention is simple, easy to understand, or a narrow technological advance, does not foreclose patentability. *Goodyear Tire & Rubber Co. v. Ray-O-Vac Co.*, 321 U.S. 275, 279, 64 S.Ct. 593, 594–95, 88 L.Ed. 721 (1944); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1572, 1 USPQ2d 1593, 1600 (Fed.Cir.), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987) ("Though technology has burgeoned, the patent system is not limited to sophisticated technologies ... difficult for judges to understand and foreclosed to those who make less mysterious inventions a judge can understand").

The question before the jury was whether Kenney had proved, by clear and convincing evidence, that the claimed combination would have been obvious to a person of ordinary skill in that field. The jury answered the question "No".

The jury may have given substantial weight to the objective indicia of commercial success, copying, long-felt need, and failure of others, for these aspects in this case were of exceptional force. Such indicia, reflecting the contemporaneous reaction of those affected by the invention, give counterweight to judicial hindsight. *Graham v. John Deere Co.*, 383 U.S. 1, 36, 86 S.Ct. 684, 703, 15 L.Ed.2d 545, 148 USPQ 459, 474 (1966) (quoting *Monroe Auto Equipment Co. v. Heckethorn Mfg. & Sup. Co.*, 332 F.2d 406, 412, 141 USPQ 549, 555 (6th Cir.1964)):

[Objective indicia] may also serve to "guard against slipping into use of hindsight," and to resist the temptation to read into the prior art the teachings of the invention in issue. [Citation omitted]

The speed with which this industry, that the district court described as "sluggish", moved to copy the Ferguson shade, when

its commercial value became apparent, may have been significant to the jury.

The district court granted Kenney's motion for directed verdict, and held the claims invalid for obviousness. We as the appellate tribunal do not decide independently whether the window shade was obvious or unobvious: we decide only whether a reasonable jury could have reached the verdict that was reached, in accordance with the established standard of review of jury verdicts. Thus I have reviewed whether a reasonable jury could have reached the verdict that invalidity of the '770 patent had not been proved by clear and convincing evidence, and I have reached a conclusion contrary to that of the panel majority—their conclusion being based on their new standard of independent determination of the issue on the prior art.

*The Trial*

The jury trial took nine days. The trial judge correctly instructed the jury as to the law of 35 U.S.C. § 103, with thorough explanation of what factors the law required the jury to consider.

The following extracts from the multipage instructions show the care with which the jury was instructed:

*Obviousness*

There are three tests which must be considered in determining whether an invention is obvious:

1. What was known in the field of window shade manufacture and design at the time the invention was made;

2. How the claim you are considering is different from what was known in the field of window shade manufacture and design at the time the invention was made, and

3. The level of ordinary skill in the making of window shades.

In addition to the three tests of obviousness you should consider evidence of the following factors in your determination of obviousness:

1. Commercial success or lack thereof;

2. Long felt but unfulfilled need for the product; and

3. Failure of others to develop the product.

Obviousness is not determined by the use of hindsight, the fact that something seems simple to you now does not mean that it was simple at the time it was invented. You must decide the issue of obviousness solely on the basis of what was known by a person with ordinary skill in the art of making window shades at the time of the invention. You must not decide this issue on the basis of what is known now; that is, on the basis of hindsight.

The court instructed the jury concerning the meaning and application of the *Graham* factors. Illustrative of the instructions concerning the *Graham* factors are the detailed instructions as to the level of skill:

In determining the level of ordinary skill in the art, you should first determine whether there was a number of people who regularly worked to solve the type of problem that the invention solved, and, if so, determine the level of ordinary skill of such people at the time the invention was made. You must consider the level of skill as to the time the invention was made. Among the factors that may be considered in your determination are:

(1) The various ways that others sought to solve the problems existing;

(2) The types of problems encountered;

(3) The rapidity with which new inventions are made in this art;

(4) The sophistication of the technology involved; and

(5) The educational background of those actively working in the field.

Neither party has asserted that there was error in the law that the jury was told to apply, including the question presented of whether the defendant

has proven by clear and convincing evidence that any of the claims of plaintiff's '770 patent are invalid because they are obvious ...

If yes, list claim numbers....

We do not decide whether the trial judge, or an appellate tribunal, could reasonably have reached the independent conclusion that the claims were invalid for obviousness. *Lavender v. Kurn*, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946) (it is "immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable"). The only question is whether a reasonable jury could have held, as this jury did, that the challenger Kenney had failed to show obviousness of any claims by clear and convincing evidence. *Perkin–Elmer Corp.*, 732 F.2d at 893, 221 USPQ at 673.

The evidence before the jury included the following:

### Prior Art

The jury was told of the close prior art; that the Corcoran scored shade material was prior art and was acknowledged in the specification; and that adjustable-width rollers were part of the prior art. Witnesses explained to the jury that the Rice patent described a telescoping roller for use with standard (i.e. non-tearable) shade material, and that the Gossling '468 and Gossling '944 patents disclosed telescoping rollers to which a standard shade is affixed by various adhesive means.[7]

There was testimony that Ferguson made a new product; and Kenney's own expert witness Donofrio testified as to the differences between Ferguson's invention and the prior art. Witnesses also testified that none of the attachment means or adhesive means disclosed in the prior art was specifically adapted to adjusting and installing a shade without tools. See the trial testimony of Newell's expert witness Bushnell:

Q. ... how would you characterize Tom Ferguson's patent on his do it yourself without tools window shade?

A. Well, this product apparently has no real antecedent. There was never a product from the testimony I've heard here today and from the prior patents I've seen, that had a roll up window shade that was able to be sized at home without the aid of tools.

Kenney's engineer Paul Comeau agreed that the Ferguson shade was "a very different shade" than he had seen. In its analysis, the district court agreed that "No item of prior art teaches a tear shade mounted on a telescoping roller by adhesive means." 606 F.Supp. at 1293, 226 USPQ at 164.

### Prosecution History

It was explained to the jury that the examiner had twice rejected the claims, citing prior art references and also objecting that the claims as filed were too broad. The examiner would not allow the claims until they were amended to include the critical limitation that the shade assembly "is width adjustable and installable by the consumer without the use of tools or cutting elements".

### Level of Skill

The parties agreed that this device did not require complex engineering skills. The district court found that "a technical background not necessarily amounting to a college degree in engineering" was the only reasonable jury finding on the level of skill, and concluded that:

This person [of ordinary skill] would be capable of designing a shade such as the one described in Vincent Sordillo's memo.

*Newell*, 606 F.Supp. at 1294, 226 USPQ at 165. The district court was referring to a private memorandum of a Kenney employee. The court recognized that this memorandum was not part of the prior art, although the court apparently drew inferences adverse to Newell from this abandoned idea, and did not discuss whether the jury could have drawn other inferences, favorable to Newell, such as why a person "capable of designing a shade", in the district court's words, did not do so. *See Stan-*

---

7. The panel majority emphasizes that "the Corcoran material and shade design ... had *not* been considered by the PTO examiner" (emphasis in op.), a point on which there was no evidence whatsoever. Indeed, the district court stated that the material was disclosed in the specification, without Corcoran's name. *Newell*, 606 F.Supp. at 1293, 226 USPQ at 164.

*dard Oil Co. v. American Cyanamid Co.,* 774 F.2d 448, 454, 227 USPQ 293, 298 (Fed. Cir.1985).

The jury may have given weight to the undisputed fact that despite the availability of the Corcoran shade material and the other prior art, the accused infringer did not make this innovation, criticized its value, and then rushed to copy it.

### Objective Indicia

The district court recognized the outstanding public acceptance of the claimed shade, but dismissed the considerable evidence of commercial success and copying, saying that "such copying does not equal nonobviousness of the claimed invention." *Newell*, 606 F.Supp. at 1296, 226 USPQ at 167. The record shows extensive, uncontradicted evidence before the jury, in many instances the testimony of Kenney's own witnesses, of commercial success, copying, long-felt need, and failure of others:

*1. Commercial Success and Long–Felt Need*

William Uecker, Senior Vice President for Kenney, testified that the market for window shades had been altered by this new shade, which he foresaw as taking half the window shade market:

Q. Did you foresee any impact in the cut-in-store shades, for example, by virtue of this do-it-yourself shade?

A. I saw that, and probably still do, that the market for stock window shades will end up about fifty percent of what we call the cut window shades and fifty percent of what we call the adjustable window shades.

John Donofrio, Kenney's design expert, agreed with the testimony of Uecker:

Q. ... Now do you agree, Mr. Donofrio, with the deposition testimony that was read in of Mr. Uecker, that Tom Ferguson's do it yourself without tools window shade was a significant step forward in the window shade art?

A. Yes.

Q. And do you agree with Mr. Uecker's testimony that there was really nothing like it before?

A. Yes.

G. Dickson Kenney, defendant's President, discussed the demand in the marketplace for the Newell shade, and Kenney's loss of customers:

Q. Now, how did you first learn that, that there was this demand in the marketplace?

A. Several companies had come to Kenney and requested that we develop a product similar on their behalf ... And we were aware that there had been some limited, limited successes on the part of Newell and Clopay in switching certain customers from the so-called conventional shade to the size-at-home, and some of these people that switched early in the process were Kenney customers on other products.

Mr. Kenney testified that millions of dollars were involved. Mr. Wright, Operations Manager for Kenney, stated that a reason Kenney entered the do-it-yourself-without-tools window shade market was because K–Mart had switched to that product.

Mr. Fallin, the President of Newell's window shade furnishings division, stated that Ferguson's shade was "about as new as you could get at that time":

Q. Would you describe Tom Ferguson's do it yourself without tools window shade as an improvement on what had gone before?

A. Well, it was more than an improvement because it really changed the method of marketing this product line, so it was about as new as you could get at that time.

Fallin testified concerning the immediate success of the do-it-yourself shade:

Well, from the very beginning, the product started selling. We had a success from the first test store and the sales continued to climb ever since. It's never peaked. It's been a real success story....

Fallin, like Kenney's witnesses, testified to consumer demand and displacement of the prior art product:

Q. Well, in light of that [total shade sales staying flat], can you explain why

the sales of Mr. Ferguson's shade show an upward trend ... from 1975, about 30,000, to 4 & ½ million in 1983?

....

A. Well, it has to be taking business from the cut in store shade because if the total units are fairly constant, and the Ferguson shade is increasing in numbers, the only place it could come from would be at the expense of the cut in store type product.

The district court gave no weight to the evidence of commercial impact; nor did the panel majority. Precedent requires that *all* the evidence, including the objective indicia, must be considered in determination of unobviousness. *See, e.g., Simmons Fastener Corp. v. Illinois Tool Works, Inc.,* 739 F.2d 1573, 1575, 222 USPQ 744, 746 (Fed.Cir.1984), *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985) ("evidence arising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness.")

### 2. Copying

Ferguson testified about the interest shown in his invention, by buyers and competitors, at the January, 1976 Housewares Show in Chicago:

A. Well, that was the first national introduction of the product, and it was a big booth. That's the largest show in our industry so that's where all the buyers come to see the new products, and we had a demonstration, and a large display, really introducing the product to everybody. The aisles were packed with people. It was the best I've ever seen for the demonstrations. During that time, the Clopay people spent quite a bit of time in our booth, actually even measuring the physical displays, trying to understand as much as they could about our product.

Uncontradicted evidence showing copying by six manufacturers (Kenney, Breneman, Graber, Clopay, Joanna–Western, and Stanley) appears throughout the record. The jury could have placed weight, in its determination of unobviousness, on this im-

itation by the entire window shade industry.

### 3. Failure by Others

The district court stated in its opinion:

There was no evidence that others skilled in the art tried and failed to find a solution to the problems preventing in-home fitting of window shades once the Corcoran material was introduced.

*Newell,* 606 F.Supp. at 1294, 226 USPQ at 165. The record does not match this statement. There was testimony that the industry had long recognized the existence of significant problems with the way window shades were fitted, yet previous solutions failed for various reasons. Fallin testified about a device designed to enable cutting a shade at home. Ferguson testified about an adjustable end-plug.

The jury heard this testimony that the industry was aware of the problems with the cut-in-store type of shade. They heard of attempted remedies that failed, and the development of other take-home shade systems that failed. There was substantial evidence of failure by others who were presumably of skill in the window shade art.

### The Jury Verdict

The objective indicia can comprise compelling evidence of nonobviousness. *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538, 218 USPQ 871, 879 (Fed.Cir. 1983) ("evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not.") This considerable evidence was before the jury, along with the prior art, the prosecution history, and extensive argument and explanation and demonstration by counsel and witnesses for both sides.

"Determining the weight and credibility of the evidence is the special province of the trier of fact." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 856, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982). The trier of fact must not only identify the prior art, its scope and content, but it must also weigh all the evidence,

impose the viewpoint of the person of ordinary skill, and determine if the burden of proof has been met.

A reasonable jury, on the evidence presented, could have concluded that the claimed invention had not been proved obvious by clear and convincing evidence. I would reinstate the jury verdict, for on the correct standard of review the grounds for reversal of the jury verdict are not met.