86 F.3d 1173
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CHRYSLER CORPORATION, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 95-1366.
 United States Court of Appeals, Federal Circuit.
 March 22, 1996.
 
 Before NEWMAN, MAYER, and LOURIE, Circuit Judges.
 DECISION
 LOURIE, Circuit Judge.
 
 
 1
 Chrysler Corporation appeals from a judgment of the United States Court of International Trade denying Chrysler duty-free treatment for certain sheet metal components that were manufactured in the United States and assembled into motor vehicles abroad before re-entry into the United States. Chrysler Corp. v. United States, No. 92-01-00005-S (Ct.Int'l Trade Mar. 14, 1995). Because Chrysler has not demonstrated error in the court's decision, we affirm.
 
 DISCUSSION
 
 2
 Chrysler manufactured sheet metal parts in the United States for use in the production of motor vehicles. The parts were then shipped to two plants in Mexico, where they were assembled with other components into finished motor vehicles. During the assembly operation, the sheet metal parts were painted by a multi-step process that involved applying zinc phosphate, primer, sealant, antichip coating, color coats, and an outer clear coat sealant.
 
 
 3
 Upon re-entry of the completed vehicles into the United States, Chrysler sought a tariff allowance for the value of the sheet metal components. Chrysler relied on item 9802.00.80 of the Harmonized Tariff Schedule of the United States (1990) ("HTSUS"), which provides a duty exemption for components that meet the following criteria:
 
 
 4
 Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape or otherwise, and (c) have not been advanced in value or improved in condition abroad except by operations incidental to the assembly process such as cleaning, lubricating and painting. [Emphasis added].
 
 
 5
 Item 9802.00.80, HTSUS. The United States Customs Service ("Customs") denied Chrysler a duty exemption, asserting that the sheet metal parts had been "advanced in value" and thus were dutiable. After its administrative protest was denied, Chrysler filed suit in the United States Court of International Trade challenging Customs' denial of a trade allowance for the disputed parts.
 
 
 6
 The court, applying General Motors Corp. v. United States, 976 F.2d 716 (Fed.Cir.1992), entered judgment for the United States. The dispositive issue, the court stated, was whether the painting operations as a whole were of a "minor nature" so as to fall within the "incidental to the assembly process" exception under item 9802.00.80, HTSUS.* The court stated that, consistent with General Motors, two factors were relevant to this question: (1) a comparison of the cost of painting operations to the cost of the affected components, and (2) a comparison of the investment in painting operations to the investment in the body shop. The court found that these factors did not favor Chrysler, because the painting operations as a whole accounted for 30-40% of the total cost of the affected components, and the capital investment in paint shop operations was substantial compared to body shop investment. The court therefore held that the painting operations at the Mexican assembly plants were not "minor" and thus were not "incidental to the assembly process." Accordingly, the court entered judgment for the United States.
 
 
 7
 Chrysler raises three principal arguments on appeal. First, Chrysler contends that item 9802.00.80, HTSUS, itself provides that all painting operations are "incidental to the assembly process" without regard to quantitative or qualitative comparisons between the painting and other operations. Second, Chrysler argues that 19 C.F.R. § 10.16 (1990) specifies that primarily preservative painting operations will be treated by Customs as "incidental to the assembly process." Thus, because the court found that 70% of the overall painting operations for both Mexican plants were for preservative purposes, Chrysler contends that the court should have held that the painting operations met the requirements for the exemption under item 9802.00.80, HTSUS. Third, Chrysler asserts that the court misapplied General Motors when it did not consider the factual distinctions between that case and Chrysler's and rejected other bases for comparing the painting and assembly operations.
 
 
 8
 The government responds, inter alia, that our decision in General Motors controls this case and mandates an affirmance of the court's decision. We agree with the government. In General Motors, we held that, consistent with the decisions of our predecessor court, only minor operations incidental to assembly may be given duty-free treatment under item 807.00, Tariff Schedules of the United States (1986) ("TSUS"), the predecessor to item 9802.00.80, HTSUS. General Motors, 976 F.2d at 719-20. The legislative history supported our interpretation of the tariff provision. See H.R.Rep. No. 342, 89th Cong., 1st Sess. 49 (1965); see also United States v. Mast Indus., Inc., 668 F.2d 501, 506 (CCPA1981) ("[O]perations [such] as applying preservative coatings and testing and adjusting the components are incidental to the assembly process 'if of a minor nature.' ") (quoting legislative history). We rejected General Motors' argument that, under the plain language of the statute, all painting operations are "incidental to the assembly process." Rather, we held that "[t]he statute's reference to 'painting' is simply an exemplar of an operation which is potentially 'incidental to the assembly process,' not a definitive statement that all painting operations, no matter how extensive, are allowed under item 807.00(c)." General Motors, 976 F.2d at 719.
 
 
 9
 Here, as the Court of International Trade recognized, there are no relevant differences between the tariff provision interpreted in General Motors, item 807.00, TSUS, and item 9802.00.80, HTSUS. Thus, Chrysler's first argument, that the plain language of the statute mandates a duty exemption, was rejected by the court in General Motors.
 
 
 10
 In addition, we cannot accept Chrysler's contention that the court misapplied 19 C.F.R. § 10.16. Although the regulation arguably suggests that primarily preservative painting operations may be treated by Customs as "incidental to the assembly process," the regulation must be read in light of General Motors. Thus, as the court stated, even though a painting process may have an overall preservative purpose, it will be dutiable if it is not "minor" in terms of the cost comparisons found determinative in General Motors. The court did not err in finding that these cost factors were not in Chrysler's favor. Further, the regulation itself provides that "[a]ny significant process, operation, or treatment ... shall not be regarded as incidental to the assembly and shall preclude the application of the exemption to such article (emphasis added)." 19 C.F.R. § 10.16(c). As an example of a nonexempt operation, the regulation lists "[p]ainting primarily intended to enhance the appearance of an article or to impart distinctive features or characteristics." 19 C.F.R. § 10.16(c)(3). Chrysler has not persuaded us that its painting operations were not significant or that they were not primarily intended to enhance the appearance of or to impart distinctive characteristics to the sheet metal parts.
 
 
 11
 Furthermore, since we conclude that the court correctly applied General Motors, we also reject Chrysler's contention that the court erred in not considering any factual distinctions between Chrysler's case and General Motors and in rejecting other possible bases for comparing the painting and assembly operations. We have considered Chrysler's remaining arguments, but find them unpersuasive.
 
 
 12
 Thus, because "[t]his court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned in banc," Newell Cos. v. Kenney Manufacturing Co., 864 F.2d 757, 765, 9 USPQ2d 1417, 1423 (Fed.Cir.1988), cert. denied, 493 U.S. 814 (1989), and this case is controlled by our interpretation of the comparable relevant tariff provision in General Motors, we affirm the decision of the Court of International Trade.
 
 
 
 *
 It was not disputed that the components had been exported in condition ready for assembly without further fabrication and that they had not lost their physical identity. See item 9802.00.80, HTSUS. It was also not disputed that the parts had been "advanced in value," unless the painting operations were determined to have been "incidental to the assembly process."